# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40826
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 29, 2018

Lyle W. Cayce
Clerk

HILDA BERTA RAMOS,

      Plaintiff – Appellant

v.

WEBB CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,

      Defendant – Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:15-CV-55

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

This appeal arises out of the tragic death of O.R., a minor child and the adopted son of Hilda and Agustin Ramos (collectively "Plaintiffs"). O.R. was allegedly involved in an illicit relationship with Fallon Cremar ("Cremar"), one of his teachers at Bruni High School ("BHS"). On February 18, 2013, R.J. Montalvo ("Montalvo"), a BHS teacher, saw O.R. hugging Cremar. Montalvo reported this to his superiors at BHS. Two days later, after investigation by the BHS principal and WCISD superintendent had already begun, O.R.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40826

committed suicide. Following O.R.'s death, Plaintiffs filed suit against Cremar, WCISD, the Benavides Independent School District ("Benavides"), and the Freer Independent School District ("Freer"), alleging violations of 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681. After Plaintiffs voluntarily dismissed Benavides and Freer, WCISD moved for summary judgment on all claims. Finding that Plaintiffs had produced no summary judgment evidence demonstrating that either WCISD or its officials acted with deliberate indifference, the district court granted summary judgment in favor of WCISD and certified its order as immediately appealable under Federal Rule of Civil Procedure 54(b). We agree with the district court and therefore AFFIRM.[1]

On appeal, the Plaintiffs argue that the district court erred in granting summary judgment because there was record evidence (1) indicating WCISD violated Title IX by failing to adequately respond to Cremar's alleged harassment of O.R. and (2) indicating WCISD violated § 1983 by failing to properly train or supervise its employees.[2] Though the standards for school district liability under § 1983 for a failure-to-train claim and Title IX differ slightly,[3] both require Plaintiffs to show that either WCISD or its officials in charge of supervising Cremar acted with deliberate indifference.[4]

---

[1] We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

[2] Below, Plaintiffs also alleged that WCISD violated § 1983 by creating a danger that caused O.R.'s abuse and suicide and, alternatively, that WCISD violated § 1983 by ratifying Cremar's abusive actions. Plaintiffs did not substantively brief those theories on appeal and, consequently, they are abandoned. *See Gann v. Fruehauf Corp.*, 52 F.3d 1320, 1328 (5th Cir. 1995).

[3] *See Doe on Behalf of Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 220 n.8 (5th Cir. 1998).

[4] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292–93 (1998) ("Until Congress speaks directly on the subject, however, we will not hold a school district liable in damages

No. 17-40826

"The deliberate indifference standard is a high one."[5] "To act with deliberate indifference, a state actor must 'know[ ] of and disregard[ ] an excessive risk to [the victim's] health or safety.'"[6] In other words, "the plaintiff must demonstrate culpability beyond mere negligence or even gross negligence."[7] The state actor's conduct "must amount to an intentional choice, not merely an unintentionally negligent oversight."[8] Moreover, even if the state actor has actual knowledge of a substantial risk of harm to the victim, if he responds reasonably to that risk, he will not be held liable even though the harm ultimately occurs.[9]

Here, the Plaintiffs cannot show that either WCISD or its officials acted with deliberate indifference. It is undisputed that WCISD had in place policies that prohibited teacher-student relations and that required reporting of sexual harassment. It is also undisputed that WCISD held regular training sessions on these policies. These policies, even if imperfect, were not so inadequate that they were "likely to result in the violation of constitutional rights."[10] Thus, they cannot support an inference that WCISD itself was deliberately indifferent.

The Plaintiffs also did not set forth facts from which a reasonable jury could conclude that WCISD officials were deliberately indifferent to O.R.'s plight. On February 18, 2013, Montalvo observed O.R. hugging Cremar. Montalvo immediately reported his observation to BHS Principal Humberto

---

under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference."); *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) ("For Sanders-Burns to succeed on her [§ 1983] failure to train claim against Plano, she must demonstrate that . . . Plano was deliberately indifferent in adopting its training policy . . . .").

[5] *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (quoting *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

[6] *Id.* (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002)).

[7] *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 883 (5th Cir. 2004).

[8] *James v. Harris Cty.*, 577 F.3d 612, 617–18 (5th Cir. 2009).

[9] *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000).

[10] *Canton v. Harris*, 489 U.S. 378, 390 (1989).

## No. 17-40826

Soliz ("Soliz"). Soliz then asked Montalvo to record a written statement of his observation, which Montalvo did. The next morning, Soliz asked Cremar for a statement regarding the incident, and he personally observed O.R. for any abnormal behavior but found none. That same day, Dr. Severita Sanchez ("Sanchez"), the WCISD Superintendent, questioned Cremar in person regarding the incident, and, although Cremar denied any impropriety, Sanchez placed her on administrative leave. Later that day, Sanchez asked Antonio Flores ("Flores"), a WCISD security guard regularly stationed at BHS, to talk with O.R. the following morning and ensure that he was well. In their conversation the following morning, O.R. told Flores that he did not have a relationship with Cremar and that he "just wanted to give her a hug." Flores assured O.R. that he had done nothing wrong and instructed O.R. to give a written statement. That evening, O.R. took his own life. On this record, WCISD officials did not knowingly and recklessly disregard potential abuse or danger to O.R.[11] Accordingly, there is no genuine dispute whether any WCISD officials acted with deliberate indifference toward O.R.'s constitutional rights.

For these reasons and for the reasons stated by the district court, we AFFIRM.

---

[11] *See Whitley*, 726 F.3d at 641.